Our first cases are numbers 22-1417 and 22-1484, Lontex v. Nike. Mr. Penikowski? Thank you and good morning, your honors. Stanley Penikowski for the Appellant and Cross Appellee, Nike Inc. I would like to reserve five minutes for rebuttal, please. Thank you. Unless the court steers me elsewhere, I plan to address three issues. Fair use, willfulness, and the exceptional case ruling. And if the court rules for Nike on fair use, then it need not reach any other issues in the appeals. First, Nike's use of the words cool, compression, merely to describe features of its products, was fair use as a matter of law. Just like in the 7th Circuit's sport fuel case and the 2nd Circuit's cosmetically sealed case. The undisputed facts established each element of this defense. The district court's denial of judgment as a matter of law was based on the good faith element. But that decision cannot be reconciled with the correct legal standard for good faith under this court's precedent. Is there an argument that you used this as a trademark because you have these other kinds, you have dry fit, you have hyper warm. Is it possible that cool compression is just using this as a trademark? No, your honor, that wouldn't be a reasonable inference from the record. Because when you look at the case law and all of the factors that would be indicia of trademark use, none of those are present here. You don't see the use of cool compression on any products, labels, hang tags, packaging. It's not featured in any advertising campaigns or retail store displays. And that stands in stark contrast with a term like dry fit, which as the record shows, was used on products. Well, you owned dry fit. Correct, your honor. You didn't own cool compression. Correct, your honor. But why would you put cool compression on all your products when you didn't own it? Your honor, because as the record uniformly showed, Nike used the words cool and warm to describe thermoregulatory features of its products. And the words cool, the words compression and fitted to then describe the tightness of the fit. And the Supreme Court has explained in KP Permanent that the fair use defense is important because a trademark owner, even with an incontestable registered trademark, cannot have a monopoly on the descriptive use of these descriptive terms. I mean if they just said cool or if they just said compression, fair. But they're combining the two, sometimes directly, sometimes with words in the middle, sometimes everything else like this. But when you combine the two, doesn't that begin to take you outside of what the Supreme Court said? Were those cases dealing with a combination of terms or were they dealing with one term isolation? Your honor, most of these cases are dealing with a phrase or a combination of terms. For example, love potion in the dessert beauty case that the Second Circuit summarily affirmed. You also have sealed with a kiss and cosmetically sealed in sport fuel. You actually have Gatorade admitting that they use Gatorade, the sports fuel company, as a rebranding effort and as a slogan in an advertising campaign. And even there, your honors, the Seventh Circuit said as a matter of law, that is not a trademark use. You do not even have any fact like that here. All it wants is to point to, as your honors noted, is the presence of cool and compression next to each other in the Nike Pro product style names. And the record again shows without this branding technique, right? I mean the people that brand the Nike products aren't novices. It was a catchy phrase and it helped sell a lot of product. It was put in the tech sheets. There was training on it. There was testimony from Nike employees that they were encouraged to sell the product that way. Even I think even there was testimony from retail folks that were trained on it, right? So it's not accidental. It's all very intentional. No, your honor, there's no evidence of that. That would just be based on speculation. There's no evidence that Nike promoted or encouraged anyone else to promote cool compression as a trademark. There wasn't testimony in the record that they were trained to use cool and compression together? No, your honor, not outside the context of the entire style name with Nike Pro. There was evidence that showed that. I didn't say it had to be outside the style name Nike Pro. So, your honor, are you suggesting that it's as long as Nike Pro is attached to cool compression that that solves your problem? Your honor, in these circumstances that this court has recognized in the case law, the presence of the Nike Pro house marks at the beginning of the style name is a significant factor that ameliorates that. The Second Circuit and Seventh Circuit also recognize that. It could help you on likelihood of confusion, certainly. Your honor, if somebody sees the swoosh or the jump man and cool compression, there's a decent chance they're going to think it's a Nike product because those brands are emblematic. I mean, those logos, right? That is correct, your honor. And it is also a strong indicia of non-trademark use as the Seventh and Second Circuit have recognized. I don't understand that sort of aggregation theory. I mean, that's like saying that, you know, as long as you put LifeWater in front of Gatorade, you're not infringing upon Gatorade. I mean, once you put the word Gatorade with LifeWater, you're infringing on it. So to here, once you add cool compression to Nike Pro or DryFit, you're using something that belongs to somebody else, according to the trademark office. Your honor, that type of per se rule is not the law. And again, in cases like Sport Fuel and Dessert Beauty, the alleged trademark was used in the name of a product. Yet in those cases, the court said that this is a fair use as a matter of law. And so when we go back to the style names, your honor, what we have here is a uniform record that shows that. And you see this from the exhibit that plaintiff itself has put in the record, the supplemental appendix, page 146 to 22, about how Nike names its products. And what you see from that and from also appendix pages 2594, 2595, is that you have various components of the style name. And one of them would describe material. So just to maybe pick up on a combination of what you're saying, sorry for interrupting, and what Judge Hardiman asked, what if Lontex decided that it wanted to market something called cool compression DryFit? And so what happens is under your theory of fair use, we could say, okay, cool descriptor, compression descriptor, dry descriptor, fit descriptor. Maybe it's because dry is D-R-I or something like that. But it feels like you could say, hey, any time we have true descriptors, no matter how big the collage is, we're going to fall into fair use as a matter of law because they're not used as a trademark. They're merely to describe the product. And then we get into the one point that you kind of haven't touched on, which was central, which is good faith. I don't know where your thoughts are on good faith. I don't know where your thoughts are on this DryFit hypothetical. It's not the greatest hypothetical because dry is spelled different. I think it's D-R-I, and so it's spelled differently. And, Your Honor, if I may address both those questions. Please unpack it for everyone, at least for purposes of me. Thank you, Your Honor. So with DryFit, as Your Honor indicated, there are legions of differences beginning with the fact that you have spelled as D-R-I hyphen fit. And in those circumstances, Your Honor, the issue isn't whether looking at the style name alone allows you to determine whether there is a non-trademark use as a matter of law. You have to look at the entire record, particularly the objective evidence. Because the Supreme Court said in KP Permanent, the inquiry is, was the use objectively fair? And it's compatible with a certain degree of consumer confusion, which, again, we argue was not present here as a matter of law. But even if some consumers were to look at the style name and have some confusion based on that, you look at everything else. So if it was cool, compression, D-R-Y, no hyphen fit, you would say fair use by Long-Tex? Your Honor, we would need to know a lot more facts. I have to admit that now because Long-Tex would have a field day with that. But it seems like if the protection in yours to your trademark, you know, it would probably work for cool compression. And, Your Honor, this is where it's important then to open up the entire field of vision to look at all of the other indicia of trademark, non-trademark use that the courts have recognized and say, okay, well, is the defendant putting it on product, labels, handkerchiefs, packages? Are they promoting it as a trademark? Is it featured in an advertising campaign? Is it featured in retail store displays? And with respect to the use of cool compression here, we don't have any of that evidence in the record. So I get that those are the traditional ways of doing it. But, you know, Long-Tex had its kind of own kind of unique market, right? Small budget, call taken on the cell phone, but kind of a very personal way of doing it. And so if Nike's way of using cool compression is more akin to Long-Tex's way of cool compression, that is not putting on products, not doing this, doesn't that kind of show that at least for Long-Tex's marketing methods, Nike's doing something a little closer instead of the full barrage of things that not even Long-Tex is doing? No, Your Honor. So first, Long-Tex is faster to do those things are all indicative of the weakness of its trademark. That's LAP, right? That's LAP 2 or something like that. Correct, Your Honor. But even so, you need to look at whether the defendant is doing any of these other things in order to see are they making a trademark use. And the use that is accused here, which is the appearance of the two words next to each other in the Nike product soundings almost exclusively online, that's not even a use that Long-Tex was making of the terms. So even under the terms of that hypothetical, Your Honor, there's a big distinction. And on good faith, which also relates to the legally improper willfulness verdict and the error on the intent factor for likelihood of confusion, what we had here, Your Honors, is a uniform record, not just witness testimony, but the documents in the record showing that cool and warm were used as material modifiers. And then compression and fitted were used to describe the tightness of the fit. And all of that established Nike's good faith. And in response to that, Long-Tex actually has made it easy for this court in reviewing this decision under a judgment as a matter of law standard because Long-Tex pointed only to two facts to try to negate good faith. The same two facts that they used exclusively to try to support willfulness, which were the lack of a trademark clearance search, and then the lack of immediate cessation in response to Long-Tex's cease and desist letter. After counsels said there was a problem. Your in-house counsel said there was a problem. No, Your Honor. There's no evidence in the record that Nike's in-house counsel said that there was a problem. That's Long-Tex's assertion in their brief. Didn't one of Nike's lawyers say to instruct cessation of use of cool compression? Yes, Your Honor. The latter, Nike's in-house counsel did instruct cessation. However, Nike's in-house counsel did not. There's no evidence in the record, Your Honor, that Nike's in-house counsel said that there is a problem. I'm making what I believe to be not so substantial leap in logic that when in-house counsel says stop doing something, it stands to reason that it's because there's a problem or a potential problem. What evidence do you have in the record that Nike's legal department believed that its use of cool compression was in fact fair use? Your Honor, in the trial record, there is nothing that describes Nike's legal counsel's opinions. What we actually have here, Your Honor, is better, which is the consistent testimony. I'm looking for citations and statements, not generalized descriptions. What evidence in the record is there that Nike believed it was engaging in fair use? You've already said there was no evidence of the legal department believing fair use. You can see that fair use is a legal term of art in this case, correct? Correct, Your Honor. What do you have if you don't have legal department? Your Honor, we have testimony from Nike witnesses at pages, for example, 11, 14, and 15, 11, 67, 11, 87. Can you go through some of those? Sure. Your Honor, would you like the numbers or would you like me to describe? If you could quote, I'm going to pull up the pages. You said 11, 14, 16. 11, 14, 15, 11, 67. So let's start with that. 11, 14 is appendix four, is it? And so, Your Honor, in all of these citations, which are also in the briefs on fair use and also on willfulness and intent, these are all establishing two facts. One, that Nike was using the words cool and warm to describe properties of the materials used in the products. So just quote for me the language that indicates that Nike's use of the phrase cool compression constituted fair use. Yes, Your Honor. So on page 11, 14, Ms. Ireland, a Nike employee, is explaining line five. So base layer would come in a few fits. There would be a compression fit, which is like the tightest fit closest to your body. Then we also had a tight fit or a fitted fit. That is a little bit looser than a compression, but still form-fitting to the body. And then Ms. Ireland goes on to talk about Silhouette, talks about the marketing of the products in it. Nike would put Nike Pro on products, on inside labels, and on hang tags. And the evidence, including the physical exhibits that this court has, shows that cool and compression. Is the phrase cool compression mentioned on 11, 14? No, Your Honor. Okay. So where do you have evidence that cool compression, that phrase, that somebody at Nike thought it was fair use? So, Your Honor, there's not evidence where any of these lay witnesses are drawing a legal conclusion that it's fair use. What these witnesses are testifying to is Nike's intent to use these terms only to describe these features of the products. You mentioned Silhouette, you mentioned all kinds of things, but you didn't mention cool compression. Where do the lay witnesses say cool compression is fair use? They don't. Right. And that proves, Your Honor, why this record is uniform in showing that Nike was only using the terms cool and warm and then compression and fitted in a descriptive way. I guess my thought on that is, you know, on the good faith area, I get it. You've got some evidence that some people at Nike thought, hey, look, we're just using this descriptively. We don't have a problem with this. But I don't know that that's the entire record because, and for you to win, you have to kind of say, look, the record is unequivocal on this, at least as I understand the standard. Because there's other evidence, length of time for which the infringing took place, the cease and desist letter, the statements from in-house counsel. And so when we want to look at good faith, if we put all those pieces together, why isn't that a factual determination as opposed to one that we can just say, I think you've got good evidence that there was good faith there. I don't know that the only evidence is that there was good faith and that the only conclusion that must be compelled is that there's good faith. And so if there's some degree of contrary evidence, then I don't know that you can take – you see my point? Like you've got to show not only that you've got good evidence, but there's no other evidence, and this is the only conclusion that can be drawn. And Judge Harden was kind of teasing out, hey, aren't there other pieces of evidence here that might color that determination? No, there is not, Your Honor, and I think that as you're pointing out, it starts with the legal standard. So this court in the Institute for Scientific Information set out the legal standard for good faith and fair use, and that is whether the defendant intended to trade upon or dilute the goodwill of the trademark owner. And then you take the J-Mall standard, which this court in Walter v. Holiday Inn said it's not whether there's literally no evidence to support the non-moving party's position. It's whether – is there enough evidence here that could properly support the jury's verdict? Can you draw that reasonable inference? And here, Lontex has made it easy because, Your Honor, there is no contrary evidence that would show under the legal standard that Nike intended to trade upon or dilute Lontex's goodwill. Rather, they point only to two facts that this court in Securicom in the willfulness context, as well as this court in the intent context and other courts directly in the good faith context for fair use have said are legally insufficient. And you see this at pages 15, 19 to 21 of the record where counsel is delivering the closing argument about willfulness. And for all of these intent-related issues, points only to two facts. One, no trademark clearance search, and then two, no immediate cessation. And then the evidence also shows that Nike did take steps directly in response to the cease and desist letter. So can I just ask this a little bit? Yes, Your Honor. So if there was only one fact, no trademark search, we would probably say we've got case law that says that's just not enough to get to deliberateness. That's just not enough to get to willfulness. That's not it. If there was only one fact which says, hey, you didn't cease in response to the cease and desist letter even for a period of two years, we might look to some case law and say, in isolation, that's not enough either. But they do have two facts, and they're trying to take them in aggregate, couple them, put them together, and say, hey, does that now rise to the level? Those two in combination, I get divide-and-conquer works for you, but what about the combo? Right. Your Honor, this court has already addressed a case where those two facts were present, and that is Securicon, where in the willfulness context, the court had both the lack of a trademark search and the failure to cease immediately in response to a cease and desist letter. You also had that in the Desert Beauty case directly about good faith and fair use where you had both of those facts. And in both of those cases, the court said this just isn't enough from which one can reasonably infer some sort of intent to confuse or some sort of intent to trade upon or dilute the goodwill of the markholder. At most, these facts may be consistent with carelessness. So can we add in this kind of third fact of the advice from legal counsel to quit using the cool compression? I mean, isn't that kind of fact three? And if that is fact three, doesn't that take you outside of Securicon? Your Honor, that wouldn't be the third fact. That would actually be something that undercuts the force of the second fact on which Lantex relies. So we have two problems with their reliance on the lack of immediate cessation. First and most important here, that is insufficient as a matter of law, even when you combine it with the lack of a trademark clearance search. And then, Your Honor, it's also factually flawed because even though Lantex has repeatedly said throughout their briefs that Nike did nothing because it thought that it was able to get away with just pure speculation and innuendo, the facts actually show that Nike did take steps and took steps immediately where they went ahead and they ensured that cool and compression were separated from each other on all pages on Nike.com, not just some of them. They took steps to make sure that words would no longer appear next to each other in wholesale catalogs. It did take some time for those updates to happen, and those catalogs are— Your Honor, there's no—there was in the record testimony that all of the relevant Nike partners were informed of the need to separate the— Nike ever removed cool compression from the text sheets? Your Honor, I would need to check the record and see if there was any specific testimony saying that it was confirmed that they were removed from the text sheets, but there is testimony that there were instructions that were given to everyone to— Do you have any evidence in the record where Nike removed cool compression from the text sheets? Your Honor, not at this point. Okay, thank you. All right. You've gone quite a bit over. You still have plenty of time on rebuttals. Yes, Your Honor. Thank you. We'll hear from Mr. Saitlin. Saitlin, thank you, Your Honor. Misha Saitlin for Law & Tax. I'll talk a little bit about good faith and that also interacts with willfulness, but I would appreciate the opportunity to talk about our cross-appeal as well. Once I get through that, I guess we'll see how it goes. With regard to good faith and willfulness, as was already explored a little bit by this panel, what happened is, as of 2016, it was undisputed that they knew about our registered, incontestable trademark. And yet they did nothing, absolutely nothing, in their most important sales channel, which is the third-party retailer where most of us buy Nike, Dick's Sporting Goods, Walmart, et cetera, to get them to stop using what their own counsel told them to do. They eventually stopped using it. It took them— It just took a while. I mean, this is not a small, nimble company like your client's company, so it takes a while for these things to—changes to be made, right? There's no evidence that it was working through its way through Nike bureaucracy for two years. I mean, what I think the fairest difference from the trial record and certainly one that the jury could draw is, you know, to quote the Securicon case that my friend referenced, there was an aura of indifference. They got this instruction from counsel. It instructed them to stop using cool compression. They did some things on the website, and then they just didn't bother with the text sheets, the all-important text sheets, just how the retailers know how to brand the Nike products or the catalogs. Did nothing for two years. I think the fairest difference from that is that it's an aura of indifference, but certainly that's a permissible inference, and that's enough by itself to negate any assertion of good faith or— Let me just tease out on it. Let's just say that any jurist in the world, anyone in the world would say, you know what? They meet the first two criteria for fair use. Cool compression meets it. They're not using this trademark, and they're merely using it to describe its product. Let's just say that—hypothetical, right? I know you've got issues with that, but let's just say that's the case. And then Nike says, hey, we're in the heartland of fair use right now, so we're in total good faith if we continue to use it. Can't good faith be continued use when you know to a certainty that you meet the first two criteria? Or do you still have to sit there and say, oh, we should stop even though we think we meet to a certainty the first two criteria? What do you think? Well, good faith and willfulness are subjective inquiries, so you have to do an inquiry. Was it fair for a jury to determine that it wasn't done by Nike for that reason? And I think the fairest of, certainly possible, when you have a direction from the legal department, say stop. Stop on the website. You don't stop in the most important stuff. If you just don't care, you think this is a small fry, this is a gnat, we're not going to bother. Not that we think our legal, not our lay people think our legal department is wrong and we're going to keep doing it, but we just don't care. I think if they had gotten this instruction from the legal department and said, stop this because this is an Adidas registered incontestable trademark. This is a Reebok incontestable trademark. You can bet your bottom dollar. It would have been out of those text sheets within days. It wouldn't have taken two years to get out of the text sheets. And I think that's clearly what happened. I think that's by far the fairest inference, but it's certainly a possible inference from the jury to draw. And once it's concluded, that's a possible inference for the jury to draw. That knocks out the good faith defense. That knocks out all the wolf in this arguments. And then all we're left with is the laugh factors. They don't put into a single decision, any appellate decision, overturning a jury verdict of confusion on the laugh factors. So I think that that disposes of their entire appeal. So then what about what about the attorneys fees point? I mean, I mean, it is as I looked at this, I saw that, you know, attorneys fees were a multiplier of actual of damages. Damages were in the seven hundred thousand range. Attorneys fees were in kind of the five million for high four million range. And so why is this the sort of case that would get that would trigger fee shifting? Is it just because of willfulness again? Well, certainly the district court here pointed to the to willfulness and under under this court decision of fair win. That's an important that's an important factor. Again, they don't point to a single decision anywhere in the country where there was a willfulness finding. And the district court exercises broad discretion toward attorneys fees. And one is collapsing to the others. Yeah, we're sort of back to where we started, which is I hear you reading the Lanham X affirmative defense in sort of parsing out the elements. But as I see the statute, it's basically a holistic determination. We don't we don't look and say, was it used as a trademark? Check. Was it used in good faith? Check. What we're doing is saying, hey, was this used in a way that is not part of the protections that Congress sought to impose in the Lanham Act? And so to judge this point, it seems like once you start saying again, I know you'll disagree. But if hypothetically, we said, well, it's not being used as a trademark. This is being used descriptively. We start to move into that infects that that affects our way of thinking about what a defendant's actions were relative to remedying the allegation of unfair use. So the delay starts to see perhaps less onerous. It seems as a matter of law, more likely reasonable. But you have to, I think, take the other argument, which is now we have to separate these things out in order to find an individual term of willfulness. And then that's what's going to support the damages award as well as the attorney's fees. Right. Well, I apologize if your honor, we're talking talking. You're always talking about the good faith, the good faith defense. Certainly, I don't think it's a dispute of those three elements. It has to be good faith, subjectively good faith. It's not like the lab factors where you could ignore one factor. But but with regard to attorney's fees, you already have that's at the end of the ballgame. You already have the jury verdict. And, you know, and. But the legal standards exceptional. Correct. That's right. And it's abusive discretion review. So we show some deference to the trial court. But the trial court has to make a finding that this case is exceptional. Yes. And like my colleagues, I'm I'm concerned about the notion that willfulness suffices to make the case exceptional. Because to me, those are two different things. I mean, here the judge explained his willfulness finding, which resulted in the troubling of the damages. But it seemed like the explanation on attorney's fees was a little thin. I mean, I mean, I read the trial transcript, 10 day trial, hard fought, very well lawyered by both sides. Seemed case seemed rather routine for me. It didn't seem very exceptional. Well, it's certainly I mean, willfulness. I mean, even if a trial judge has the discretion not to award attorney's fees in a willfulness case. I mean, this court and Fairwin suggested that willfulness is an important consideration. So why is it enough, though? Well, so it weren't some of the considerations not proper because because some of the considerations seem to be just strong policy considerations. David versus Goliath. You know, is it the case that any time a small company challenges a big company that if they prevail, even in a modest verdict like this, that the you're going to be able to back up the truck and get millions of dollars in attorney's fees? Well, a couple of these are on our first as I read Octane Fitness, including footnote six, it's an all things considered inquiry. So these are wild, certain mentality. And so we were talking about totality. And I think that this notion of the big attorney's fees versus small damage actually supports what the district court was doing, because in order to bring a case like this against the big company, there's no challenge here. The five million dollars was spent was was was too much. I'm not saying your fees were too high. Right. So to word them at all, when at least I read Octane Fitness is saying the number one thing we're looking at is strength of case. And I'm not sure that you can say that this is just absolutely hands down the strongest case you'll ever see or is extraordinarily strong, such that if there's a Bell distribution that you're at the sweet spot of the curve either. So I think it's just building on that. Where did the district court make that fight? So I think that also the findings on J.A. 41 to 42. But I think that the reading the word strength of case there in isolation, I think, is misleading. And as as this court, I think, clarified in Fairwind, what the strength of case means is how bad was the misconduct? Not was was it that we were entitled to? I thought Fairwind talked about two different but I thought it bifurcated. It said there's two ways we can meet the red octane fitness. There's two with how you litigate and then how strong things are. And I'm focused not on the how you litigate part, but the how strong of a case because people litigate in unfortunate ways and that that's going to get fees. But this case isn't about unfortunate litigation. It's about strength of case. And I guess what I'm saying is, do you agree that this isn't something about the litigation tactics? Absolutely. But strength of case, your honor. So I guess my thought is if we're supposed to be looking at strength of case and maybe a little more holistically, I'll spot you a little of that. But I don't know that we can inject any policy reason whatsoever for deviating from the American rule into that consideration. If we sit there and say, hey, it's David versus Goliath. I think it's a good policy to encourage this, especially in the trademark use area. Those feel like policy justifications are kind of far away from just the standard strength of case. So just focusing on strength of case as such and putting aside the very important policy considerations that I do think are permissible under footnote six of octane fitness. The strength of case doesn't go to whether, you know, we were entitled to summary judgment or something. That is how bad was the misconduct that the jury found strength of cases? And honestly, like, you know, that's a weird one because the award wasn't particularly huge. And the punitive damages, there were punitive damages, but I don't think there were punitive damages that would throttle a company like Nike in the least. I mean, I mean, that's true. However, the that, you know, the misconduct that was found here was willful, which is a very which is which is, I think, an important consideration. So the average meter had to be very low for it to be three hundred and sixty five thousand dollars. I mean, maybe so, although obviously the US Supreme Court has held that multiples of certain amount are even violating due process. So maybe, you know, the jury, you know. Well, we're familiar with W, but it was familiar with those kind of factors. And but it isn't you know, it isn't ultimately the jury's decision on a price fees. It's the judge's independent decision. And in fact, I think it would you know, it might be problematic if the judge was kind of outsourcing that special case inquiry through a reading of punitive damages to the jury. But I guess that's what I'm coming out with in the civil rights context. There's a really, really, really kind of willingness by Congress to to to to transfer fees because it says even if even a disabled person was denied access to the library for one hour, you know, we want them to vindicate their concern and we'll we'll engage in fee shifting. So if they win at all, they get fees for the party standard here. It's not the prevailing party standard. Just winning isn't good enough. It seems that we have to look at other things. And if we're looking at other things, it just strikes me. Man, five million dollars is a lot. I assure you that for something that went to a jury trial and seems that at least some of the elements of fair use are met. Some of the lap fact people can argue whatever they want. Well, your honor, I mean, I'm five million. I think I mean that this the pure number of how much it is, I think, should play has to play no role in the analysis. That's the weather. You're saying that the fees either it's a binary. Fees are either appropriate because the case is exceptional or if the case is not exceptional, fees are not appropriate. And then the only consideration is where the timesheets justified. That's exactly right. Although I do think the five million actually kind of points in the direction points to the notion that if you if your honor's hold is a matter of law, that even a showing a willfulness against the major corporation like this is not sufficient for attorney's fees. And the willfulness again, you're referencing back here to the failure to conduct the trademark search and then the delay in intervening. Yeah. And the second thing I want to just highlight that more about that. Yeah. And especially that satisfies both that defeats the fair use defense. It helps show your line in that affirmative claim and then it justifies the exceptional. So it gives the attorney's fees on a line in that case. Not to win. Well, no. Well, I mean, if you don't have willfulness, then you're not going to win the case. The fair use defense is going to come up in most everything. So I would assume if you have you can just say bad that you could have bad faith under the Lanham Act affirmative defense, but you couldn't. But not not might not be willful. And therefore, you know, the good faith defense is often not even an issue in cases. Now, usually in trademark cases, you get you get if you get a win, you get it on lab factors. It's rare that you get a willfulness when that's a rare circumstance. And I'm saying not saying that that always leads to an attorney's fees. But that's a good reason to give to let the district court who actually sat the jury, who is the is the who set up a trial and who's given the initial discretion of why birth. And I think it's telling we've got to look at his reasons, though, too. Right. Well, I agree with you about deference here. It's relatively deferential standard of review. But you pointed us to appendix forty two and paragraph three. The court said if damages from Nike would not fully compensate plaintiff, the award of attorney's fees will help do so. Because otherwise, long text with itself would have to pay its attorneys. It's not realistic to expect a small firm like long text to be able to pay the legal bills to a major law firm for this type of case. That strongly suggests that if you were representing Adidas or Under Armour, the fees would not be awarded. Well, you are. I mean, that's certainly it's certainly not. You know, I think that's an additional consideration. But I think it is it is just true that they have not started a single pod case. Is that a valid stick with me on this, though, is that a valid consideration? I'm questioning whether that's valid, because to me, I don't know if I can accept the premise. That whether or not a case is exceptional will be dictated by the relative size of the litigants. And I'm happy to be persuaded if you can persuade me why that that should be part of the exceptional calculus. I'm happy to hear from you and Mr. Panikowsky on that. But I'm I'm questioning that. So I kind of have three three responses I'd like to give. First, I do think it's a relevant consideration because it is part of it. All things considered, judgment and footnote six of Octane Fitness says says it's an office. Second, if you had a great substantive gap between the strengths of the cases, then it wouldn't matter. Depend the size of the entities wouldn't matter. So you can't get attorneys if you're a big firm. No, I don't I don't think I don't think that's right. That wouldn't you know, I mean, that wouldn't afford any sort of legitimate like a sliding scale between like how big a company you are and how strong a case you have. I mean, there's certainly, you know, resistance in some some some judges to to failure to have bright line rules, you know, just as clear the law rules, you know, et cetera, et cetera, that you all know. But it is in all things considering this one of the criticisms of all things considered inquiries is you can end up importing a lot of considerations. But if your honor just does not accept that all factual considerations, it's totality of factual considerations, not laying in policy overtones and then saying these facts help a policy consideration. It was, I think, facts designed to show that it's an exceptional case, not who the parties were to the case. And at least I read it is the buzzword is strength of case. It's all things considered for strength of case, not for other policy considerations that aren't related to the claims or defenses in a case such as the identity of the parties. So, you know, I mean, I just really want to make the following point. If your honor disagree with me that that's a permissible consideration, then the prop and I think it is a miserable consideration. I think there's no case ruling it out. The proper disposition in that sort of circumstance would be to make clear to the judge that you can't use consideration, send it back for re-evaluation. I was going to ask you about remand is a possibility here. Yeah. It's possible that the record could support a finding of exceptional case. But what we have here in terms of justification doesn't cut the mustard. I mean, I think that, you know, you're not, you know, I think there's a lot of cases saying you're not in an abuse of discretion review. You're not supposed to grade the district court's work. But if your honors think. But if your honors think that. And so I don't think that this explanation is not fulsome enough on on strength of argument is. But if you think that that particular factor, the David of Goliath, was legally improper, and I disagree with you, then I think you send it back to the district judge and say, don't look at David and Goliath. But I don't think that just for administrability and other areas of law, you should say that you didn't say enough words. And so we're not going to do the kind of. And I'm out of time. Unfortunately, really, really, a remand would only be appropriate if we find that one of his articulated considerations was an improper one. Was legally improper under, you know, our campaign. But you're you're emphasizing that it's a totality of the circumstances approach and that's flexible. And, yeah, and I do think it is telling that they did not point to a single district, a single policy in any one nation overturning an attorney's. Well, do you have any cases like this where the. There was one hundred and forty two thousand dollars in royalties and three hundred and sixty five thousand impunities and then attorney's fees were awarded. And it was you have other cases that were affirmed where the attorney's fees dwarfed the jury verdicts like this in this case. No, because that's not a relevant factor. The amount of attorney's fees, as your honor noted, is benefits binary, though. I think maybe just try to miss questions. Don't do the comparative part. Just say when when your takeaway was this kind of small for how big it could have been. Do we then see an award of attorney's fees? I think he's asking, do you have a case where you're you're taking home concerning what you could have taken home and considering what you probably hope to take home? You're taking home much, much, much less in the way of damages than you probably were hoping that was probably hoping for. Do you see attorney's fees in those? I mean, I mean, that would involve going into the complaints of cases and seeing what a lot of times folks are asking for. What's the best case, then, for where the totality of the circumstances were similar to the circumstances here and it was found to be exception? I think that's the I agree. I mean, it doesn't look let's assume the amount of the award doesn't matter, that it is binary. But it has to still be what's the legal standard for the totality of circumstances, which it seems like octane. And we have said looks substantive strength of the case and then litigation. Yeah, that's that part. So we're in the substance strength of the case, which I'm not seeing. I'm not seeing something analogous to here where you say it was litigated. The jury made a finding, but it's not the district court isn't making a finding that says there was no reasonable defense here. No, I think this is an important distinction on strength of case. What what Fairwind said and what this court cases court cases before Octane Fitness looked at the fact that there is willfulness, even if willfulness is a close call or not. If there is willfulness, that itself makes the case strong in a different way, not strong. It allows you to get discouragement, right? That's a discourage profits if you could show willfulness and things like that. Well, I mean, that's certainly that's, you know, I don't hope to be able to cover a cross appeal. We had two cross appeal issues. The statute is a local violation. The case allows you to get, among other things, defend its profits and sustain by plaintiff. Right. And then it says at the end, the court in exceptional cases may award a reasonable attorney's fee. So why wouldn't I mean, I think what you're saying is, well, this does the whole thing. If you have willfulness, then it is an exceptional case. But then why would you need that clause at the end that says and why would you add an exceptional case at all? You would just say an attorney. Well, willfulness is not earlier mentioned in one one 17. So the the fact that there is a willfulness. Certainly, I think it would it is sufficient to put it within the ambience of a district court's discretion. And there is no case anywhere in the country saying that that that that a district court committed reversible error for granting attorney's fees where there was where there was willfulness. Now, I just meant just it is mentioned earlier in one 17. But the exceptional fee is the last part of the 17. But before that, it's discussion about profits, damages and. Yeah. And so if you're honest, those have to be willful. But then it is exceptional. So I just I think you could just talk attorney's fees into the first part of one 17. It was all supposed to be about willfulness. It seems the more natural rating is the one octane and fair wind give, which is look, this is about overall substantive strength of the case. And what the district court here did, I think we I think we agree was not look at it through that lens. It applied the alternative test, which I understand you to argue is the same as the totality of the circumstance. And maybe maybe that's where our disagreement. I don't think even my friends argue that willfulness that a fighting willfulness is not part of that first factor of first path. They say that that's just not enough. And they point to a couple of cases that haven't awarded attorney's fees despite fighting willful. Sorry. I know you want to get to your your kind of counterpoints, your counterclaims and stuff like this. Yeah. I'll just give you a quick preview. You're challenging, at least where I am. You're challenging a counterfeiting claim. You know. Right. You think the dismissal of counterfeiting was was improper. That's right. Just I'll give you a quick hit. When I think a counterfeiting claim, I think of fake purses and fake watches that that that's what instantly comes to my head. And so when I'm thinking about this case, I'm thinking to myself, how close is this case to a fake purse or fake watch case? It doesn't strike me as that close. So now the legal standard is kind of a little weird because it says identical or sub substantially similar. I'm going to bar that. But it's something like that. But I still think of it as really just a fake purse, fake watch case. Yeah. So why why is this case that got the legal standard wrong or or why is this case so close to fake purse, fake watches? You know, I think that intuition was also my intuition before I came to this case was probably what was animating. There's also. But there is a different statute for if you're trafficking in counterfeit goods. You can get thrown in prison for that kind of thing for the statutory text. And we're all textualist. The statutory text says that it has to be an identical or substantially indistinguishable. And that, I think, is why McCarthy on trademark calls a first class infringement. You're not talking about confusingly similar. If you have a registered trademark and you use an identical version of that, that's all it takes to satisfy statutory text. Does that mean a good counterfeiting case would be if long text garments always use cool compression and Nike's garments used cool compression? And we have the inverse of that here. Long text often didn't have it on the garment, at least initially. And and I don't see it on any Nike garments. Well, nothing. It's sort of it's like counterfeit in the ether. Nothing in the statutory text requires it to be on the garments in connection with the sale of goods and they're using. But to judge Fitz's point, I mean, you know, if you really want to trick someone into buying counterfeit garment, you want it to look, feel, say the same things as the real McCoy. And here not to. And that doesn't even cover the point that the swoosh and the jump man are iconic brands. So you'd have to have been living in a, you know, in a very private cave somewhere not to understand that the garments with the shoes, the swoosh or the jump man are Nike goods. Well, our theory of counterfeiting was that they were using an identical version of our mark to represent to the world that they had had the right to use the long text school compression technology. It was a motion to dismiss. That was our theory. So the fact that they put Nike before the counterfeit mark fully supports our theory. It doesn't refute it. And I certainly understand. Not on the garment, though. You know, I understand. That was my intuition. Marketing materials. I'm stuck on the fake versus fake watch. I mean, this case is really not trying to sell a garment and say, hi, this is this. This is actually cool compression, not Nike. I don't. In fact, you've got testimony from at least one, maybe two of your witnesses that really undercut you because it helped you in the other part of the case and your case in chief because the testimony went something like, oh, yeah, you know, I went into a store and I saw cool compression. And I think this might have been the trainer for the Phillies or the Eagles. And the response was, oh, I thought maybe you had licensed. I called Mr. Nathan and said, did you license your product to Nike or did you sell it to Nike? Yeah. Right. So that's kind of the inverse of counterfeit, isn't it? Well, I understand the sense in which you're all using the word counterfeit. There is a statute that makes, for example, a criminal violation to trafficking counterfeit goods. The statutory text. I mean, the statutory text just requires that the mark be used in commerce that's identical. It is. They use cool compression. It is a registered mark. They use it in commerce. Nothing else is required by the statutory text. So the fact that there is a more colloquial or use of selling counterfeit handbags and things of that sort, which, by the way, is a separate statute. The reason it is first degree counterfeiting is because you don't need to go through the lab factors. You just it's you don't have that. Like, we're usually similar. It's literally the same mark. Now, with regard to the evidence, I actually think that evidence would be consistent with our counterfeit theory. But in any event, this is a motion to dismiss. None of that. None of that matters. The question is, did we and we put a hypothetical in our in our in our brief that I think was pretty telling of some. It's the new company arose and put out, put out something that said this is new company. Dry fit, dry, dry fit with that. And they put it out. Never like you. So it was a new company. Drive it in the register trademark. I think that would be a legitimate counterfeiting trademark, counterfeiting claim. And Nike would be able to prove it up. And we got dismissed at the motion dismiss stage. So, you know, if your honor is going to remand for a more, more false accusation of attorney's fees, I would urge remaining on this and also on discouragement. I mean, the district court, if you read the post, the remedies opinion, if you read everything in the court of the opinion that says that we're entitled to enhance damages. I mean, if you just cross off enhanced damages and put discouragement, all of that would lead to us getting discouragement. It's pretty clear that what the judge said at the end of of when he was talking about enhanced damages, he said, the reason I'm not doing this court is because the jury has already spoken to the issue. That's not where you do advisory verdicts. This wasn't the rule. Thirty nine C2, where the party is conceded to to set an issue discordant to the jury. This was an advisory board. So if you're going to send it back on for more fulsome explanation of attorney's fees, I think you've got to send it back on a more fulsome explanation of discouragement. And whether the court would in fact. So let me just make sure I'm tracing this. So what you're saying is on attorney's fees, if there's reservations that the district court engaged in impermissible considerations, policy considerations at the attorney's fee stage. What you're also saying is the district court engaged in impermissible considerations in rejecting the discouragement claim. That's right. I mean, I think the best way to read his opinion is he's saying I'm doing it because the jury has spoken on the issue. And this was not a thirty nine C2. So if you're going to send it back for a more fulsome explanation, attorney's fees, you should send it back on for a more fulsome explanation. That's because it's not. So the point is it's not permissible to say, look, I'm looking at what the jury did. Just I just I'm not not going to do just discouragement based on how they weighed the facts. The the verdicts that they gave. I'm just not going to go with discouragement. You know, that's the difference between a thirty nine C1 and a thirty nine C2. And I mean, again, if you read the portion of his opinion, I mean, when he talks about life enhanced damages, that's the same thing that you would say if you're giving someone a discouragement. It's all the same words. I mean, he doesn't use banjo and stuff, but it's just the same stuff. So if he's got to, you know, if he's going to clarify attorney's fees, have him classify discouragement and clarify discouragement. I think it's important, you know, to point out that this court in Marshak held that just the necessity for deterrence itself is a distinct, is a disjunctive reason for discouragement. You can't reject discourse just because you think we're going to get some sort of windfall. If you conclude that this kind of verdict, this this small verdict, that is not going to deter a company in the future from engaging for the willful misconduct that was found here. Let me before you sit down, one quick question. Hopefully there's a quick answer. But the district court didn't define recklessness in the jury instructions. Problematic or not? It's not problematic. I mean, that's a term of art that's used. I mean, if you take a look at, you know, the what what this court said in Securecom McCarthy says that 30, 65, 62. I mean, that's just what the jury instructions are. And so 1574 to 1576. Thank you, Mr. So a rebuttal from Mr. Panikowski. Would you mind beginning with an answer to the same question I just asked your friend about definition of recklessness? Yes, Your Honor. The district court's failure to give a legally correct definition of recklessness is a major problem in this case. But not only that she hates willfulness and the remedies that were based on it, but also flowed upstream into fair use and legitimate confusion, underscoring why J-Mall is appropriate there, too. And the reason, Your Honor, why the district court's instruction on willfulness. Yes, Your Honor. My understanding is it didn't define recklessness, correct? Correct, Your Honor. Is was that a problem or not? Yes, Your Honor. It was a twofold problem. One, because the district court told the jury that they could find willfulness based on reckless infringement. And that standard is not found in the court's case law. Rather, the court provided the standard in Securecom. When the court said, and I quote, Your Honor, knowing or willful infringement consists of more than the accidental encroachment of another's rights. It involves an intent to infringe or a deliberate disregard of a mark holder's rights. The district court didn't instruct the jury on that standard. Moreover, Your Honor, the district court did not apply that standard in considering Nike's motion for judgment as a matter of law on willfulness, as well as on fair use and likelihood of confusion, where the district court simply incorporated its findings on willfulness. And, Your Honor, that's a reason why we need judgment as a matter of law on willfulness, because as shown in the Supreme Court's City of St. Louis v. Proprotnick opinion, you need to measure whether there's substantial evidence against the correct legal standard, not against the erroneously instructed legal standard. And so here, if this court has any concerns about setting aside a jury verdict that relates to willfulness, good faith intent, those concerns are assuaged not only by the lack of substantial evidence, but by the fact that this jury was laboring under an incorrect instruction from the district court on willfulness. And then even when the jury asked for a definition of good faith, was not given this court's definition from Institute for Scientific Information about intent to confuse or to trade upon or to dilute the mark holder's goodwill. And therefore, Your Honor, the jury did not have the proper legal standard against which to measure the evidence. So it's a little awkward because at least as I understand it, you're supposed to kind of exchange the parties. Rule 51 says, you know, propose your jury instructions to the parties, you know, before you before you read them to the jury. Yeah. It's a rule. But let's just say there was a rule 51 kind of conference outside the presence of the jury. Like how big is the gap? Like what are you saying should have been in there that wasn't in there? Your Honor, there is. We don't know because you didn't really object because you didn't really have a great opportunity to object, at least contemporary. I mean, what's the gap? I guess my question is like how we want to see how big this is. I'm kind of curious to know what happened. Let's measure what actually occurred versus what you think should have occurred. Yes, Your Honor. There is a significant substantive gap. So first, we did raise the rule 51B problem. We nonetheless objected to the willfulness instruction afterward. And then, Your Honor, we also proposed to the court a supplemental instruction on willfulness at docket number 346 that used the 11-cert model instruction to convey the same standard from Institute for Scientific Information from this court, intent to trade upon or dilute the goodwill of the mark holder. And that is very significant because merely telling the jury you can find it based on reckless infringement would allow the jury to draw the impermissible inference that Lantex has advocated in this case to simply look at this and say, well, they didn't perform a trademark clearance search, and they didn't immediately stop everything in response to the cease and desist letter, and we think the company should be more careful than that. The district court's instruction not only permitted that inference but actually told the jury you can infer intent from the failure to cease the allegedly infringing conduct. What's wrong with that? First off, Your Honor, because this court in Securicom has said that you cannot infer willfulness from the failure to yield to a cease and desist letter. I don't recall in Securicom that counsel advised the cessation. That wasn't a fact in that case, was it? Your Honor, there isn't a fact there, but once again, that's a really important difference between that case and this case. Your Honor, first of all, that's a difference that actually cuts in Nike's favor here because, one, Nike's in-house counsel is part of Nike, and, therefore, the fact that Nike's in-house counsel said remove pulling compression from being next to each other in these product sellings, that is itself a response. That only helps you if it was executed upon forthwith, and there was tremendous delay. Your Honor, it was executed upon forthwith. As Nick Johnson's testimony at pages 23 to 21 to 23, 26 of the record shows, it was executed upon. In some ways, but in other ways, not at all. It wasn't removed from the tech sheets? Your Honor, the product style names were changed, and the product style names are the input into Nike.com, the wholesale catalogs, the tech sheets. We even heard counsel from Lantex acknowledging that there's no dispute that all of the tech sheets were changed, even though we don't have specific testimony in the record. And so what we have here is not inaction in response to the cease and desist letter. And, again, the court in Securicom made clear, even if there was inaction in response to the cease and desist letter, that itself cannot be indicative of bad faith. Did you respond to the counsel's argument that there are no appellate cases undoing district court awards of attorney's fees after finding of willfulness? Your Honor, we didn't cite any such cases in our brief. We have the federal circuit in Stryker saying that willfulness does not mandate. What's my question? He's either right or wrong. Your Honor, we are not aware. Correct or not? Correct, Your Honor, we're not aware of any appellate cases that have reversed in those circumstances post-opting fitness. But what we do have is opting fitness itself saying that we hold that an exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position or the unreasonable matter in which the case was litigated. Nothing about willfulness. This court in Fairwind-Salem described the relative substantive strength prong as going to whether there is an unusual discrepancy in the merits of the positions taken by the parties. No mention of willfulness whatsoever. It's not to say that this court needs to rule that willfulness Why couldn't willfulness be part? You heard us undoubtedly strongly challenging opposing counsel on the notion that willfulness could be conflated with making the case exceptional. Correct, Your Honor. But are you going to argue that willfulness can't be part of a totality analysis in order to find a case exceptional? No, Your Honor, that's not our argument. But what you have to do is to the extent you consider willfulness, not only do you have the fact that this was at best a very weak strain of willfulness permitted by the impermissibly lenient instruction, you have to consider willfulness in the context of the two prongs of the exceptional case test that this court outlined in opting fitness. Getting a little away from willfulness but sticking with the opting fitness, it's a strength of case. And then we know that we're looking at totality of circumstances kind of after that. But totality of circumstances is designed to evaluate strength of case, not parties to the case, not market capitalization of parties to the case. It feels like that analysis, although it's a totality of circumstance, relates not to the parties to the case, but to the issues in the case. Is it your position that strength of case, that that's right? Strength of case relates just to the issues and the claims and defenses? Or should we, is it permissible to look, as the district court did, at kind of more factors as to who the parties were? Your Honor, it is limited to the parties litigating positions. And the district court cannot look outside that because the Supreme Court in opting fitness described this prong as the substantive strength of a party's litigating position, considering both the governing law and the facts of the case. But David and Goliath was impermissible. Yes, Your Honor. And we should make it in remand and tell him to do it over again, tell the district court to do it over again without that impermissible consideration. No, Your Honor. This court, at a minimum, should vacate, but it need not remand. And the reason, Your Honor, why this court can outright reverse the award of attorney's fees is because even though the district court did not apply the correct legal standard, the district court made numerous factual findings that easily negate the relative substantive strength prong of opting fitness. For example, Your Honor, at page A-128 in the summary judgment order, the district court said, Nike presents strong legal arguments regarding LonTex's claim of trademark infringement, talking about legislative confusion. Then at page A-133, talking about fair use, the district court said Nike makes important legal arguments on this issue. Getting to the Jamal ruling at page A-33, the district court, although denying Jamal, said that LonTex is evidently proceeding under the wrong legal standard, counsel. I don't see how we can say, well, these fact findings will accept, but the other fact findings we won't accept because they were under the wrong. I mean, it seems the natural course there is to just apply the right legal standard. Usually, the standard for remand is when an error of law is laid bare. I think this is Frankfurter. When error of law is laid bare, remand is the proper course. Your Honor, that is ordinarily the proper course, and that is the minimum relief that should be granted. However, here, a remand would not be necessary because you have all of the factual findings from the district court already saying that LonTex's evidence of legislative confusion was not overwhelming. The jury's verdict on damages was a resounding rejection, and that is enough to support an outright reversal. You're against remand there. I assume you're also against remand to clarify discouragement. Correct, Your Honor. On discouragement, first of all, the district court did exercise its independent discretion and make independent findings, and we see that throughout this discussion where, for example, at page 821, the court says, the court finds that, on the whole, the Banjo-Buddy factors favor non-discouragement, and then goes on addressing three of the factors saying no evidence that Nike intended to confuse or deceive anyone, no evidence that sales were diverted from LonTex to Nike. Let me just tease that out. Yes, Your Honor. If it was an impermissible legal consideration at the discouragement phase to look at what the jury did or didn't find, if that's impermissible as a matter of law and the district court relied on that for not awarding discouragement, why isn't remand appropriate there, too? Your Honor, for two reasons. One, so first of all, assuming there was that reliance, under Federal Rule of Civil Procedure 39, the district court is entitled to rely on an advisory jury's verdict, and as this court held in the Hayes and Greenwood cases cited in our briefs, the court may accept or adopt the jury's findings in its discretion, and we see here the district court exercising discretion by, again, making all of these independent findings and referencing the jury's – Correct, Your Honor. Those were all independent findings, and also, Your Honor, as we explained in the briefing, even if there were any error, which there was not, LonTex invited that error, especially at page A1619 when it advocated that profits should be submitted to the jury, but Your Honors need not even reach that issue because we have enough of the district court's work and findings and exercise of discretion on this issue to know that even though the district court made statements that were giving due regard to the jury's advisory verdict, it was not simply blindly following that. All right. We don't have any other questions. Do you want to wrap up? Yes, Your Honors. So this court should reverse the denial of JMAL on fair use, and that would dispose of the entirety of the cross appeals. However, at a minimum, this court should grant JMAL on the willfulness issue as well as vacate the orders that were affected by that, and then at a minimum, vacate and remand, if not outright reverse, the legally improper exceptional case ruling and fee award. Thank you, Your Honors. Thank you, Mr. Panikowski. Thank you, Mr. Setlin. The court will take the matter under advisement.